IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00397-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLARENCE GIANARELLI,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Martha A. Paluch, Assistant United States Attorney for the District of Colorado, and the Defendant, Clarence Gianarelli, personally and by counsel, Richard Tegtmeier, hereby submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I.    PLEA AGREEMENT

The defendant agrees to plead guilty to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 664, Theft and Embezzlement from Employee Benefit Plan, and to Count 21 of the Indictment, charging a violation of 18 U.S.C. § 669, Theft and Embezzlement in Connection with Health Care. The defendant agrees to pay restitution to current and former Ideal Concrete, Inc. employees in the amount of up to $108,678.35. This amount represents monies withheld from these employees' paychecks and not forwarded to the appropriate employee benefit or health care plan or

Court's Exhibit 1

account and medical bills incurred by these employees, to be itemized by employee and amount prior to sentencing. The defendant also admits the forfeiture allegation as set forth in the Indictment and agrees that the forfeiture described therein is not excessive.

The defendant agrees that prior to the change of plea hearing, he will execute all forms necessary to allow the Profit Sharing Plan participants to obtain their account balances from Ohio National Financial Services.

The defendant agrees and understands pursuant to Title 29, United States Code, Sections 504 and 1111, his convictions in this case will prohibit him from directly or indirectly participating in the affairs of any labor organization or employee benefit plan for the period of thirteen years after conviction or after the end of incarceration whichever is later. Defendant further agrees and understands if he violates this prohibition, he may be punished by imprisonment for up to five years and a fine of up to $10,000.

In exchange, the United States Attorney's Office for the District of Colorado ("the government") agrees to move at sentencing for dismissal of the remaining counts in the Indictment. The government also agrees to not file any additional charges against the defendant based on the information presently known to the government.

Provided the defendant does nothing inconsistent with accepting responsibility between the date of his plea and the date of sentencing, the government will recommend that the defendant receive the maximum reduction for acceptance of responsibility.

At sentencing, the government will argue for a sentence not to exceed 24 months. The defendant is free to recommend to the sentencing court a variant sentence below the applicable guideline range.

This agreement is submitted to the Court for its consideration pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence imposed is above the maximum penalty provided in the statute(s) of conviction; (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly; or (3a) the Court determines that the total offense level is higher than 20 and imposes a sentence above the sentencing guideline range calculated for that total offense level. Except as provided above, the defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742. The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim

that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

## II.   ELEMENTS OF THE OFFENSES

In order to be convicted of Count 1, alleging a violation of 18 U.S.C. § 664, the following elements would have to be proven by the government beyond a reasonable doubt:

*First:* the defendant embezzled, stole, or converted to his own use or the use of another;

*Second:* money, funds, or property of the Ideal Concrete Profit Sharing Plan (PSP);

*Third:* the money, funds, or property taken were assets of employee pension benefit plans within the meaning of Title I of the Employee Retirement Income Security Act of 1974 (ERISA) and;

*Fourth:* the defendant acted unlawfully and willfully, and with fraudulent intent.

*United States v. Walshe*, 526 Fed. App'x 834, 840 (10th Cir. 2013); *United States v. Smith*, 641 F.3d 1200, 1205 (10th Cir. 2011).

In order to be convicted of Count 21, alleging a violation of 18 U.S.C. § 669, the following elements would have to be proven by the government beyond a reasonable doubt:

*First:*   the defendant knowingly and willfully embezzled, stole or misapplied;

*Second:* funds that were withheld from employees' salaries and wages for the purpose of paying health plan premiums;

*Third:*   in connection with a health care benefit program, defined as any public or private plan or contract affecting commerce under which medical benefits are provided to any individual.

*United States v. Jones,* 299 Fed. App'x 187, 188-89 (3d Cir. 2008); *In Re Wentland,* 410 B.R. 585, 593 (N.D. Ohio 2009).

### III.   STATUTORY PENALTIES

The maximum statutory penalty for a conviction on Count 1, a violation of 18 U.S.C. § 664, is as follows: not more than 5 years of imprisonment; a fine of not more than $250,000.00, or both; not more than 3 years of supervised release; a $100.00 special assessment fee; and costs of prosecution. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

The maximum statutory penalty for a conviction of Count 21, a violation of 18 U.S.C. § 669, is as follows: not more than 10 years of imprisonment; a fine of not more than $250,000.00, or both; not more than 3 years of supervised release; a $100.00 special assessment fee; and costs of prosecution. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV.   COLLATERAL CONSEQUENCES

The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty pleas that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in September 2010.

The parties agree that the government's evidence would be as follows:

The defendant is the co-owner of Ideal Concrete, Inc., of Colorado Springs, Colorado, along with his late brother, John Gianarelli's, estate. The defendant was the sole person responsible for the financial activities of the company, such as paying

salaries, deciding which bills to pay, and forwarding contributions to the various employee benefit and health care plans.

The defendant started a profit sharing plan (PSP) with a 401K component (an employee benefit plan for purposes of 18 U.S.C. § 664) in June of 1983. The defendant withheld employee PSP contributions from June 1983 through August 12, 2011. He stopped forwarding contributions to the third party administrator Ohio National Financial Services on September 3, 2010. Ohio National terminated services on September 24, 2010 due to lack of payment, but the defendant continued to withhold employee contributions until August 12, 2011. Similarly, the defendant withheld contributions from his employees for life and disability insurance premiums and a savings plan, all of which qualify as employee benefit plans for purposes of 18 U.S.C. § 664, and did not forward those withdrawals to the appropriate administrator/account. The parties agree that the total amount withheld and not paid over with respect to the plans that fall under 18 U.S.C. § 664 is approximately $38,542.70. In addition, the defendant did not file the PSP's required annual financial reports with the Secretary of Labor for the years 2010 and 2011.

Ideal Concrete also offered its employees an opportunity to participate in a number of plans that qualify as health care benefit programs pursuant to 18 U.S.C. § 669, including a medical and prescription drug benefits plan (hereinafter "health plan"), cancer insurance, and a flexible spending account. Between February 23, 2011, and July 1, 2011, the defendant withheld employee contributions for these plans and did not forward those amounts to the appropriate plans. The parties agree that the

defendant failed to pay over approximately $30,135.65 to these plans during this time frame.

Specifically, as to the health plan, Ideal Concrete sponsored a health plan for its employees with Connecticut General Life Insurance Company (CGLIC). The parties agree this plan constituted a "health care benefit program" as that term is defined in Title 18, United States Code, Section 24(b).

The defendant's last payment to CGLIC was on February 23, 2011, but he continued to withhold employee contributions for the health plan until July 1, 2011, and used that money for his or Ideal Concrete's benefit. CGLIC terminated coverage on April 1, 2011. The defendant received numerous letters explaining that money was due for the Ideal Concrete health plan, that claim payment was interrupted, and finally, that the plan was terminated.

The defendant did not notify Ideal Concrete's employees that the group policy had been cancelled, and one or more employees thereafter incurred medical bills believing they had health coverage. The parties agree that approximately $40,000 in denied employees' medical claims were incurred by Ideal Concrete employees during the time period when employees believed they had health coverage when in fact they did not.

Department of Labor auditors contacted the defendant in the fall of 2011 in an attempt to bring him into compliance with respect to amounts owed to the PSP. The defendant did not pay the amount owed to this plan, and instead, declared bankruptcy in June of 2012. In the Statement of Financial Affairs defendant filed on behalf of Ideal

Concrete, Inc. in its bankruptcy proceeding, the defendant falsely declared that no monies were due to any pension fund. In addition, the defendant improperly characterized the amounts due to the third-party plan administrators of the employee benefit and health care plans and attempted to have those amounts discharged in bankruptcy. Further investigation revealed amounts the defendant withheld from his employees' paychecks and did not forward to additional employee benefit and health care plans.

## VI.   SENTENCING COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The appropriate Guideline is §2B1.1(a)(2). The base offense level is 6. The counts will group as they constitute part of a common scheme or plan. §3D1.2(b).

B. There is a 8-level increase because the total loss to the defendant's employees caused by his conduct was more than $70,000 but less than $120,000. §2B1.1(b)(1)(E) (more than $70,000 but less than $120,000).

C. There is a 2-level increase because the offense involved 10 or more victims. §2B1.1(b)(2)(A).

D. There is a 2-level increase because the defendant abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offense. §3B1.3.

E. There is a 2-level increase because the offense involved a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding. §2B1.1(b)(9)(B).

F. The adjusted offense level is therefore 20.

G. Pursuant to §3E1.1(a) and (b), provided the defendant does nothing inconsistent with accepting responsibility between the date of his plea and the date of sentencing, the defendant should receive the full three-level reduction for acceptance of responsibility. The resulting offense level would be 17.

H. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is ultimately determined by the Court. The information known to the parties, however, shows that the defendant does not appear to have any prior criminal history. Accordingly, the defendant's criminal history category is estimated to be Category I.

I. Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

J. The guideline range resulting from the estimated offense level of 17 above, and the tentative criminal history category above, is 24-30 months. However, in order

### VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 2-25-15

Clarence Gianarelli
Defendant

Date: 2-25-15

Richard Tegtmeier
Attorney for Defendant

Date: 2/25/15

Martha A. Paluch
Assistant U.S. Attorney