# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:14-cr-00397-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLARENCE GIANARELLI,

    Defendant.

_____

## DEFENDANT'S MOTION FOR NON-GUIDELINE/VARIANT SENTENCE
_____

Defendant Clarence Gianarelli, by and through his lawyer, moves this Honorable Court to impose a departure and non-guideline sentence and variance from the advisory guidelines range pursuant to 18 U.S.C. § 3553(a). As grounds, Mr. Gianarelli states:

1.    In a recent opinion, 10th Circuit Judge Gorsuch wrote:

"Sentencing someone to prison has to be one of the district judge's toughest tasks. So much is at stake for the defendant, the victim, and the community. So much responsibility rests on the judge's shoulders, along with the high expectation that the judge will wisely weigh things that cannot be easily weighed. How much punishment is enough to protect the public? To deter future wrongdoing? To reflect the gravity of the offense? And how much punishment suffices to accomplish all these things without verging on cold revenge or needless retribution? There's rarely a single right answer to hard questions like these. So our system depends, as perhaps it must, on the

1

discretion of thoughtful judges." *United States v. Sabillonumana*, 772 F.3d 1328 (10th Cir. Dec. 8, 2014).

The court in *Sabillonumana* also recognized:

"One tool district judges have to help them in their unenviable task is the advisory sentencing guidelines. The guidelines seek to supply some sense of what other courts across the country are doing in similar cases and what sentencing experts think may be appropriate.  See U.S. Sentencing Guidelines Manual (U.S.S.G.) §1A3.1 (2012); *Rita v. United States,* 551 U.S. 338, 349, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007).  Of course, each defendant must be assessed on his or her own terms: courts are not machine presses and sentences are not widgets to be churned out on some criminal justice conveyor belt. But a properly calculated guidelines sentence provides useful data, a "starting point" or "initial benchmark," even as it remains the judge's duty to tailor every sentence to the case and defendant at hand."

2.      Mr. Gianarelli is a 73 year old male who awaits sentencing following his guilty plea to Count 1, Theft From Employee Benefit Plans, and Count 21, Theft in Connection with Health Care. Mr. Gianarelli, by this motion requests that the Court grant him a departure and non-guideline and a variance from the advisory sentence range recommended by the Guidelines.

3.      Mr. Gianarelli married Carolyn Gianarelli, now age 72, in Colorado Springs, Colorado, in 1962.  Mrs. Gianarelli has been supportive throughout the instant offense.  He has remained gainfully employed in his family's business since 1972.

4.     Mr. Gianarelli has been evaluated and treated by Sonja Hellman, Ph.D., Licensed Clinical Psychologist, 5277 Manhattan Circle, Suite 110, Boulder, CO 80303. Dr. Hellman has seen him 7 times for 2 hours each session. She has treated him for psychological distress and Mr. Gianarelli's concerns about his business, his employees and those he has harmed. Dr. Hellman will continue to see Mr. Gianarelli and is of the opinion that he is an excellent candidate for probation. (See Dr. Hellman's report, attached as Exhibit A)  Mr. Gianarelli was treated for cancer in 2012.

5.     In *United States v. Koon,* 518 U.S. 81 (1996), the Supreme Court reaffirmed judicial independence to grant downward departures.  The Court explained that there is room under the guidelines for judges to exercise judicial sentencing discretion "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  518 U.S. at 113.  The Guidelines were subsequently amended as of November 1, 2010, to provide that age, physical condition, and mental health may be relevant to determine if a

3

departure is warranted if their effects are "present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."

**Factors to be considered in imposing a sentence, pursuant to 18 U.S.C. § 3553(a)**

6.   The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). The court, in determining the particular sentence to be imposed, shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. In addition, 18 U.S.C. § 3553(a) requires that the sentence: (a) reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offense; (b) affords adequate deterrence to criminal conduct; (c) protects the public from further crimes of the defendant; and (d) provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Finally, the sentence imposed must consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

7. The distinction between departures and variances has been explained as follows:

> When a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a "departure." When a court enhances or detracts from the recommended range through application of § 3553(a) factors, however, the increase or decrease is called a "variance."

*United States v. Atencio*, 476 F.3d 1099, 1101 (10th Cir. 2007); *see also United States v. Cage*, 451 F.3d 585, 591 n.2 (10th Cir. 2006).

### A. Specific Offender Characteristics Pertinent to Mr. Gianarelli

#### *Age – USSG §5H1.1*

8. As previously noted, Mr. Gianarelli is a 73 years-old. His age, health risks, a supportive wife, his history of success in legitimate business, an expert assessment of his low-recidivism risk, and his voluntary entrance into counseling and treatment are a combination of factors that distinguish him from the typical offender.

9. The National Institute of Corrections defines prisoners 50 and older as "elderly" and "aging," and 15 states specifically define an "older" inmate as one who is 50 or older. *See* Human Rights Watch, *Old Behind*

5

*Bars–The Aging Prison Population in the United States,* at 17 (Jan. 2012), *available* at www.hrw.org/reports/2012/01/27/old-behind-bars-0. Only 10.8 percent of all federal defendants are over 50. *See* U.S. Sentencing Commission, *2012 Sourcebook of Federal Sentencing Statistics,* Table 6 (Age of Offenders in Each Primary Offense Category), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2012/Table06.pdf

10. The Eight Circuit in *United States v. White,* 506 F.3d 635, 640 (8th Cir. 2007) held that a defendant's age at 51 "can and should be considered" in sentencing. Also see *United States v. Simmons,* 568 F.3d 564 (5th Cir. 2009) (remanding for resentencing of 48 year-old defendant where district court expressed disagreement with the Guidelines' then-existing policy statement regarding age, but thought it lacked discretion to consider age as sentencing factor).

11. The U.S. Department of Justice National Institute of Corrections, *Correctional Health Care: Addressing the Needs of the Elderly, Chronically Ill, and Terminally Ill Inmates*, at 10 (2004), *available at* *http://nicic.gov/library/018735,* noted that first-time offenders over 50 are particularly "easy prey" for more experienced predatory inmates. Additional factors that justify taking age into account in sentencing include "separation

from family and friends, physical confinement, poor healthcare, and the threat of victimization" as they disproportionately affect older inmates. American Civil Liberties Union, *At America's Expense: The Mass Incarceration of the Elderly*, at 1 (2012 *available at*

*http://www.aclu.org/files/assets/elderlyprisonreport_20120613_1.pdf*.

12. Because incarceration can be substantially more punitive for an older defendant than the "heartland" offender, sentencing leniency based on old age promotes the sentencing goals of imposing sufficient punishment and avoiding sentencing disparities under § 3553. "Older prisoners, even if they are not suffering illness, can find the ordinary rigors of prison particularly difficult because of a general decline in physical and often mental functioning which affects how they live in their environments and what they need to be healthy, safe, and have a sense of well-being." *Old Behind Bars,* at 45. Furthermore, it costs approximately $34,000 per year to house the average prisoner but over $68,000 to house a prisoner age 50 or older. *Mass Incarceration of the Elderly,* at vii, 26-29.

13. Any prison term consumes a proportionately larger portion of an older defendant's remaining years than of the younger "heartland" offender's. Therefore, an older defendant's shorter life expectancy supports leniency based on the sentencing goals of proportionality and avoiding

7

unwarranted sentencing disparities. Finally, a lower rate of recidivism for older inmates is well-established and supports leniency because it allows the sentencing purpose of deterrence and protection of the public to be satisfied by a lesser term. U.S. Sentencing Commission, *Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (May 2004) ("*Measuring Recidivism*") (noting that recidivism rates "decline relatively consistently as age increases"), *available at* [http://www.lb5.uscourts.gov/ArchivedURLs/Files/08-10643(1).pdf](http://www.lb5.uscourts.gov/ArchivedURLs/Files/08-10643(1).pdf). (Also attached as Exhibit B.) Courts have cited such data in imposing below guideline sentences. *See, e.g., Gall v. United States,* 552 U.S. 38, 58 (2008) (approving district court's use of studies to bolster conclusion that defendant's youth at the time of crime supported below-guideline sentence).

14. There is "overwhelming evidence that prisoners age 50 and older are far less likely to return to prison for new crimes than their younger cohorts." *Mass Incarceration of the Elderly,* at vii. And, Commission studies show that recidivism rates are lower for defendants who are married. *See Measuring Recidivism*. Thus, from a public safety standpoint, particularly where Mr. Gianarelli's offense is a non-violent one, his

circumstances render him an appropriate candidate for an alternate sentence to that of imprisonment. Probation would be an appropriate alternate sentence.

### *Mental and Emotional Conditions: §5H1.3*

15. Under USSG §5H1.3, in certain cases a downward departure may be appropriate to accomplish a specific treatment purpose. Under §§ 5H1.3 and 5H1.4, a downward departure may be appropriate to accomplish a specific treatment purpose. The presentence investigation report at paragraphs 48, 49, 50 and 51 outlines Mr. Gianarelli's physical, mental an emotional health, including the need for knee replacement surgery.

16. The Supreme Court effectively ended any limitations to the consideration of specific offender characteristics in fashioning an individual's sentence when it ruled that the Guidelines were merely advisory. *Booker,* 543 U.S. at 264-65. Judges are now invited to consider arguments that the applicable guidelines fail to properly reflect § 3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless. *Rita,* 551 U.S. at 351, 357. Although many individual characteristics are "not ordinarily considered under the Guidelines," §

3553(a)(1) "authorizes the sentencing judge to consider" such characteristics. *Rita,* 551 U.S. at 365 (Stevens, J., concurring).  Moreover, judges "may vary [from Guideline ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough,* 552 U.S. at 101.  The plain effect of *Booker* is that district courts will no longer be told, as had been mandated by §3553(b)(1), that they "shall impose a sentence . . . within the range" established by the Guidelines. *Booker*, 543 U.S. at 234 *supra*.  Instead, under §3553(a), they will need only to "consider" that range as one of many factors. *Id.*

    17.    In determining a sufficient sentence, this Court may not presume that the recommended guidelines sentence is the correct one. *Rita*, 551 U.S. at 351. Rather, after accurately calculating the advisory range so that it "can derive whatever insight the guidelines have to offer, [the district court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guidelines sentence." *United States v. Sachsennaier*, 491 F.3d 680, 685 (7th Cir. 2007).  Thus, for example, even where the Guidelines recommend prison, the court may, in a case where probation is an available sentence under § 3553(a)(3), reject that recommendation and instead impose a sentence to be served in the community.  *See Gall, supra,* 552 U.S. at 56-60 (where, despite a

10

guidelines sentencing range of 30-37 months imprisonment, the Court upheld a three-year probationary sentence based on factors that were prohibited or deemed not ordinarily relevant by their policy statements, including age, employment, discontinued use of drugs, and voluntary withdrawal from the conspiracy).

18. While the guidelines are the starting point in a sentencing determination, there is "no longer a limit [previously applicable to departures] on the variances from guidelines ranges that a district court may find justified under the sentencing factors set forth in [section 3553(a)]." *Irizzarry v. United States*, 553 U.S. 708, 715 (2008). Moreover "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also United States v. Magallanez,* 408 F.3d 672, 684 (10th Cir. 2005). Furthermore, a factor's disfavor by the Guidelines no longer excludes it from consideration under §3553(a). *United States v. Munoz-Nava,* 524 F. 3d 1137, 1146, 1148 and n. 6 (10th Cir. 2008) (approving district court's emphasis on defendant's family ties and responsibilities, notwithstanding that U.S.S.G. §5H1.6 provides that such factors are not ordinarily relevant

11

in determining whether a departure may be warranted). Thus, "[d]istrict courts are granted wide discretion in choosing which factors to rely on in determining whether a variance is justified under § 3553(a), and may choose to rely on factors disfavored by the Sentencing Commission. *United States v. Sayad*, 589 F.3d 1110, 1118 n. 4 (10th Cir. 2009).

19. Furthermore, in considering the nature, circumstances, and seriousness of the offense, the Court may consider whether the defendant's offense does not pose the same danger to the community as other crimes. *See United States v. Whitehead,* 532 F.3d 991, 1000 (9th Cir. 2008) affirming downward variance to probation in a case involving sale of counterfeit access cards, based in part on the district court's finding that the defendant's crime "[di]d not pose the same danger to the community as many other crimes"). *See also United States v. Grossman*, 513 F.3d 592, 597 (6th Cir. 2008) affirmed a downward variance from 120 months in prison to 66 months with 10 years supervised release, observing that the sentencing court "accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct," but that "it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release.

20. Mr. Gianarelli moves the Court to depart downward from the advisory guideline range and for a non-guideline sentence and variance to a sentence to probation, combined with a brief period of home confinement. This motion supports the recommendation and justification for probation as noted by the probation office in R-6 and 7 of the presentence investigation report recommendation:

> "The 74 year old defendant appears for sentencing after pleading guilty to two felony offenses. The defendant does not have previous involvement in the criminal justice system. The instant offense involves the defendant withholding employee funds for insurance and employee benefit plans and not forwarding the money to the third party administrators. The defendant claims that he used the money to strengthen the business. The defendant has cooperated throughout the presentence investigation and appears to be a low risk to reoffend.
> "The defendant's actions have caused financial and emotional hardship to the victims involved. The defendant betrayed the trust of the victims who believed that he was deferring the funds for health care coverage and to other employment benefit programs.
> "In mitigation, the defendant's conducted seems to be out of character. The defendant has no prior criminal record and has owned and operated a business for approximately 40 years.
> "The Probation Office recommends a variant sentence due to the defendant's personal characteristics and the circumstances of the instant offense. Although the instant offense occurred over a significant period of time, it does not appear that the defendant used the stolen funds for travel, automobiles, jewelry, or to perpetrate a lavish lifestyle. The defendant appears remorseful for his actions and is in a unique situation financially which enables him to pay restitution in full to all victims associated with the offense. A term of incarceration

13

> may cause the defendant's business to suffer, which would result in hardship for his current employees and delay in restitution payments to the victims. The Probation Office recommends that defendant be sentenced to three (3) years probation, as to each count to run concurrently, as a deterrent for future criminal conduct, just punishment, and as a way to protect the public from further crimes of the defendant. Additionally, the Probation Office recommends that the defendant be placed on home detention for a period of 6 months as a condition of probation. … Lastly, the three (3) year term of probation will enable the Probation Office to Monitor the defendant's behavior in the community and protect the public from additional criminal conduct by the defendant."

21.   Finally, numerous friends and acquaintances of Mr. Gianarelli have asked to contact the court. A number of letters were provided to probation. Some also appear in a video documentary regarding Mr. Gianarelli's past and current character. The documentary also confirms, with people who have known him for many years, that the charged conduct is out of character with his conduct of the past 50 years. This conduct is an aberration in his life. The documentary will be available online and submitted through a supplemental motion before May 18, 2015.

WHEREFORE, Mr. Gianarelli moves the Court to depart downward from the advisory guideline range and for a non-guideline sentence and variance to a sentence to probation, combined with a brief period of home confinement.

Respectfully submitted this 14th day of May, 2015.

        SHERMAN & HOWARD L.L.C.

        *s/ Richard Tegtmeier*
        _____
        Richard Tegtmeier, #2544
        90 S. Cascade Ave., Suite 1500
        Colorado Springs, CO 80903
        303-299-8163
        719-635 4576 (Fax)
        rtegtmeier@sah.com

## CERTIFICATE OF SERVICE

      I hereby certify that I served a true and complete copy of the above and foregoing upon the United States Attorney's office via CM/ECF e-filing, this 14th day of May, 2015.

                                    *s/ Devon O. Ryan*
                                    _____