# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Regina M. Rodriguez

Criminal Case No. 14-cr-00397-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    CLARENCE GIANARELLI,

Defendant

---

# ORDER

---

This matter is before the Court on the Motions to Quash (ECF Nos. 92, 93, 94, 95) the subpoenas issued to Vanguard Group Inc., ENT Credit Union, US Bank, and JP Morgan Chase, filed by Defendant's wife, Carolyn Gianarelli. The Government filed a combined response, ECF No. 103. For the following reasons, the Motions to Quash are DENIED.

## I.  BACKGROUND

On July 27, 2015, judgment was entered against Defendant, Clarence Gianarelli, for his theft from employee benefit plans and theft in connection with health care. ECF No. 40. Defendant was sentenced to pay $200.00 in special assessments, $108,477.99 in restitution, and $20,000.00 in fines. *Id.* at 5. The Government represents that a balance of $39,477.99 remands outstanding. ECF No. 103 ¶ 3.

The Government has been investigating Defendant's financial condition and the extent of his assets since early 2021. ECF No. 103-1 ¶ 2. Through its investigation, the Government learned that Defendant is the sole owner of Ideal Concrete, Inc. ("Ideal Concrete"). *Id.* ¶ 5. In January 2024, as part of its investigation, the Government served a subpoena to produce records on Ideal Concrete. *Id.* ¶ 6. After receiving a partial response and inquiring about missing records to no avail, the Government served a subpoena to produce records related to Ideal Concrete on Vectra Bank on May 20, 2024. *Id.* ¶ 12. Records obtained from Vectra Bank showed that from June 24, 2021, through March 22, 2024, nine checks totaling $406,800 were deposited in Ideal Concrete's account from accounts held solely in Ms. Gianarelli's name. *Id.* ¶ 13. The deposits came from accounts at J.P. Morgan Chase, The Vanguard Group, Inc. ("Vanguard"), and Ent Credit Union (the "Financial Instutitions"). *Id.* Additional records obtained from Vectra Bank further show three checks totaling $54,000 were deposited in Ideal Concrete's account from January 5, 2018, to February 11, 2022, from an account at US Bank held jointly by Ms. Gianarelli and Defendant. *Id.* ¶ 14. Ideal Concrete produced records that appear to attribute eight of these deposits to loans from Defendant to Ideal Concrete, but Ideal Concrete's records to do not reflect any loans from Ms. Gianarelli. *Id.* ¶ 10, 13-15.

Based on the Government's investigation, it believes that Ms. Gianarelli's financial records held by the Financial Institutions are relevant to the Government's investigation of Defendant's financial condition and ability to pay his criminal monetary penalties and that such records could lead to further assets that could be applied to Defendant's criminal monetary penalties. *Id.* ¶ 19. Accordingly, on August 12, 2024, the Government served

subpoenas to produce documents on the Financial Institutions. ECF Nos. 103-3, 103-4, 103-5, 103-6. That same day, the Government sent four copies of the subpoenas and the notice required by 12 U.S.C. § 3407 to Ms. Gianarelli. *See* ECF No. 103-6.  On August 20, 2024, Ms. Gianarelli filed four Motions to Quash the subpoenas. ECF Nos. 92-95.

## II.   ANALYSIS

Ms. Gianarelli moves to quash the subpoenas pursuant to the customer challenge provision of the Right to Financial Privacy Act of 1978 (RFPA), 12 U.S.C. § 3410. As relevant here, the RFPA permits the Government to obtain a non-party customer's financial records from a financial institution pursuant to a subpoena, if "such subpoena is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry." *Id.* § 3407(1); *see, e.g.*, *Neuhaus v. SEC*, No. MISC 07-0025 FCD GGH, 2007 WL 1322340, at *2 (E.D. Cal. May 4, 2007) ("RFPA is the exclusive means by which 'government authority' can acquire financial records of a nonparty 'customer' (individual) via a judicial subpoena from a 'financial institution' . . . . [O]rdinary discovery rules apply to parties in an action."). To obtain a non-party customer's financial records from a financial institution, the Government must provide the customer with a copy of the subpoena, a "notice . . . stat[ing] with reasonable specificity the nature of the law enforcement inquiry," and opportunity to object. 12 U.S.C. § 3407(2)-(3).

To object to the Government's subpoena, the customer may file an appropriate motion to quash. *Id.* § 3410(a). The motion must state, among other things, the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the government, or that there has not been substantial

3

compliance with the provisions of the RFPA. *Id.* If the Court finds that "the applicant is the customer to whom the records sought by the Government authority pertain, and that there is not a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, or that there has not been substantial compliance with the provisions of this chapter, it shall order the process quashed." *Id.* § 3410(c); *see, e.g.*, *Penalosa v. Dep't of Defense*, No. 15-mc-00049-RM, 2015 WL 1598088, at *3 (D. Colo. Apr. 8, 2015) (denying motion to quash after finding "there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry") (citation omitted).

Here, the Motions to Quash do not expressly state Ms. Gianarelli's reason for objecting to the subpoenas. However, based on the affidavits attached to the motions, the Court infers that Ms. Gianarelli challenges the subpoenas on the basis that they are not relevant to the legitimate law enforcement inquiry stated by the Government. In the identical affidavits, Ms. Gianarelli attests that she is identified in the subpoenas but is not a shareholder, director, officer, or employee of Ideal Concrete. *See, e.g.*, ECF No. 92-1 ¶¶ 2-3. She attests she does not hold assets for Ideal Concrete or Defendant and is not a party to the underlying litigation for which the subpoenas were issued. *Id.* ¶¶ 4-6. Ms. Gianarelli does not argue that there has not been substantial compliance with the RFPA. Upon review of Ms. Gianarelli's motions and the Government's responses, the Court finds

that the subpoenas are authorized by law[1] and there is a "demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to the inquiry." 28 U.S.C. § 3410(c). Accordingly, the Motions to Quash are denied.

The RFPA defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." 12 U.S.C. § 3401(8). An inquiry into what assets a defendant has, and whether those assets are held in the defendant's name or concealed, is a legitimate law enforcement inquiry when made in furtherance of enforcing the defendant's criminal monetary penalties. *See, e.g.*, *United States v. Thomas*, 165 F. Supp. 3d 992, 995 (D. Colo. 2015) (explaining that the United States "has an interest in all of the Defendant's property for purposes of enforcing the restitution order and collecting the unpaid debt" and that information concerning assets held in the defendant's wife's name and in the name of a trust was relevant to the enforcement of the defendant's restitution order).

Here, the Government's stated purpose for seeking the financial records of accounts held by Ms. Gianarelli is to establish whether and the extent to which the

---

[1] There is no dispute that the subpoenas are authorized by law. The Federal Debt Collection Procedures Act of 1990 ("FDCPA") provides enforcement tools and procedures that the Government may employ when collecting criminal monetary penalties. 28 U.S.C. §§ 3001–3308. The FDCPA permits the United States to seek discovery "regarding the financial condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure." 28 U.S.C. § 3015(a). In turn, Rule 69 of the Federal Rules of Civil Procedure permits discovery in aid of the judgment or execution "from any person—including the judgment debtor—as provided in these rules," and Rule 26 of the Federal Rules of Civil Procedure permits discovery relevant to any claim or defense. Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 69(a)(2). Thus, the issuance of a civil subpoena under Rule 45 of the Federal Rules of Civil Procedure by the government is an appropriate means of seeking information related to the enforcement of the restitution order. *United States v. Thomas*, 165 F. Supp. 3d 992, 995 (D. Colo. 2015).

Defendant has an interest in such accounts so that it may enforce the restitution order and collect an unpaid debt. Defendant has been making relatively minor payments toward his judgment while owning and operating Ideal Concrete. Although Ms. Gianarelli states that she is not a shareholder, director, officer, or employee of Ideal Concrete, the Government's investigation and the records produced by Ideal Concrete and Vectra Bank reveal substantial transfers of funds between accounts held in Ms. Gianarelli's name and Ideal Concrete's account at Vectra Bank. For example, records produced from Vectra Bank show that from January 2018 through March 2024, accounts held in Ms. Gianarelli's name from the Financial Institutions deposited $461,300 into Ideal Concrete's account at Vectra Bank. Moreover, Ideal Concrete has paid $134,245.60 more into accounts held solely in Ms. Gianarelli's name than it paid as wages to Defendant, who is Ideal Concrete's President and owner.

Based on the foregoing, the Government has shown that its inquiry is legitimate and there is a reasonable belief that the records sought from the Financial Institutions are relevant to the Government's inquiry into the Defendant's financial condition for purposes of enforcing the restitution order. Accordingly, the Motions to Quash the Subpoenas, ECF Nos. 92, 93, 94, 96, are **DENIED**.

DATED:  September 23, 2024

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge